**358 P.2d 903**

**W. E. WILLIAMS, Plaintiff and Appellant,**

**v.**

**H. R. ESPEY, Defendant,**

**J. H. Morgan, Sr., Defendant, Respondent and Cross-Appellant.**

**No. 9251.**

Supreme Court of Utah.

Jan. 25, 1961.

---

Mark K. Boyle, Richard R. Boyle, Salt Lake City, for appellant.

Mulliner, Prince & Mulliner, Salt Lake City, for respondent.

WADE, Chief Justice.

W. E. Williams who was the plaintiff in this action below appeals and J. H. Morgan,

Sr., who was one of the defendants therein, cross-appeals from findings and judgment of the court. Hereafter we shall refer to the parties either as plaintiff or defendant or by name.

Plaintiff commenced this action to obtain 10,000 shares of White Canyon Mining Company stock under what he claimed were the terms of an agreement entered into by him and the defendants, H. R. Espey and J. H. Morgan, Sr. Before trial over objections of defendants, appellant amended his complaint to ask for damages rather than for the delivery of the stock.

From the record it appears that Mr. Espey, who was a geologist, and Mr. Morgan were interested together in various uranium mining prospects during the uranium boom. On August 24, 1954, when these uranium prospects were still speculative, Mr. Espey, with whom plaintiff had no previous acquaintanceship, sought to interest plaintiff in loaning him a large sum of money. As inducement for such a loan, Mr. Espey offered to repay the loan in five months with 6% interest and give plaintiff various options to buy certain uranium stocks. Plaintiff finally agreed to loan Mr. Espey $2,500 on condition that Mr. Espey get a responsible person whom plaintiff knew or knew of to be a party to the transaction. Mr. Espey obtained Mr. Morgan as an endorser of the promissory note and as a party to an agreement in which Mr. Espey and Mr. Morgan were first parties and plaintiff the second party wherein in consideration of the loan being made by plaintiff to Mr. Espey, plaintiff was given several options to purchase certain uranium stocks or interests in uranium claims. The agreement also contained the following provision:

"Espey agrees to execute and deliver a Note in the sum of Twenty-five Hundred Dollars ($2500.00) bearing six per cent (6%) interest, for a period of five (5) months from date hereof. To secure said Note Espey authorizes J. H. Morgan, Sr. to hold for him in trust seventy-five hundred shares (7500) of the White Canyon Company stock to be delivered to Second Party upon failure to pay the Note when due."

Upon receiving the promissory note and the agreement plaintiff loaned Mr. Espey $2,500. This debt was not paid at maturity and within a few days thereafter plaintiff contacted Mr. Morgan. Mr. Morgan was surprised that Mr. Espey had failed to pay the debt and offered to pay that sum plus the interest. Plaintiff reminded Mr. Morgan that the agreement gave him certain options and when Mr. Morgan indicated he would not give him any White Canyon stock, plaintiff indicated he wanted that stock, and did not take the check in the amount of the debt due, but instead consulted an attorney about his rights under the agreement. The attorney sent a letter

in which demand in lieu of the money was made for 7,500 shares of White Canyon stock because of failure to pay the note upon maturity and also stated that "further demand is hereby made for an additional 2,500 shares of White Canyon stock at the purchase price of 80¢ per share, totaling $2,000, which amount I am authorized to pay you upon receipt of 10,000 shares of said stock." Plaintiff's demand for the 2,500 shares of White Canyon Mining stock at 80¢ a share was in accordance with the terms of one of the options in the agreement granting him the right to purchase those shares.

Mr. Morgan did not deliver any shares of White Canyon Mining stock to plaintiff. It was Mr. Morgan's contention that the transaction was usurious and therefore plaintiff was not entitled to the stock, but that if he were entitled to exercise his option for 2,500 shares of White Canyon Mining stock he had failed to exercise such option because his demand was conditioned on the delivery of 10,000 shares. It was also defendants' contention that plaintiff was not entitled to 10,000 shares of White Canyon Mining Company stock because the 7,500 shares held in trust by Mr. Morgan was security for payment of the debt on the promissory note and not, as plaintiff claimed, to be delivered as payment in lieu of the debt in the event of failure to pay the debt at maturity.

The court found that defendants had wrongfully refused to allow plaintiff to exercise his option for 2,500 shares of the White Canyon Mining Company stock and granted damages for failure to deliver this stock and also granted plaintiff $500 for attorney's fees. The court further found that Mr. Morgan had offered to pay the debt due on the note, and that the 7,500 shares held by Mr. Morgan was security for that debt and the obligations under the agreement and was not held to be delivered as an alternative to payment of the debt.

■ Plaintiff argues the court erred in construing the provision in the agreement that Mr. Morgan was to hold the 7,500 shares of White Canyon Mining Company stock in trust to be delivered to plaintiff upon failure to pay the note when due as meaning that the stock was held as security for the debt and not as evidence of an intention that the stock was to be delivered in lieu of payment of the debt. Plaintiff argues that since he never obtained possession of the 7,500 shares of stock, and that since an essential element of a pledge of personal property is that there be a passing of possession or a transfer of the property to be held as security for the payment of the debt,[1] it must be clear that the court misconstrued this provision in the agreement. We find no merit to such argument. Mr. Morgan to whom possession

[1]. 41 Am.Jur. Pages 586–592–593.

was transferred was not primarily liable for the debt, he was only an endorser on the note. The money was loaned to and for the sole use of Mr. Espey. Mr. Morgan entered the transaction solely because of plaintiff's request for a reliable person to be a party to the transaction. That plaintiff considered Mr. Morgan such a person is evidenced by the fact that he made the loan upon Mr. Espey's procuring him as an endorser of the note and as a party to the agreement. There is no dispute but what the entire transaction revolved around a loan of money by plaintiff to Mr. Espey and all the rights given in the note and the agreement were consideration for this loan. Mr. Morgan was the third person whom both parties to the loan accepted as the holder of the security for the debt. It is axiomatic that a delivery of pledged property need not be made to the pledgee, but can be made to a third person.[2] The court therefore did not err in its findings and construction of the agreement that the 7,500 shares of stock were held as security for payment of the debt and not held to be delivered in lieu of payment if payment was not made at maturity. The evidence being uncontroverted that Mr. Morgan offered to pay the debt plus interest, plaintiff was not entitled to delivery of the 7,500 shares of White Canyon Mining Company stock and the court therefore did not err in fail-

ing to find that there was a conversion of those shares by Mr. Morgan.

Mr. Morgan's cross-appeal is based on the contentions that (1) there was insufficient evidence that he wrongfully refused to allow plaintiff to exercise his option for 2,500 shares of White Canyon Mining Company stock; and (2) that the evidence and findings do not sustain the court's granting of attorney's fees.

We agree with the first contention that there is no substantial evidence that plaintiff Williams unconditionally offered to purchase such shares. The evidence concerning the conversation on this subject is very indefinite and the letter written shortly after such conversation by Mr. Williams' attorney to Mr. Morgan reduced to writing what he was willing to do thereunder. In such letter he stated:

> "Demand is hereby made upon you for delivery of 7,500 shares of White Canyon Mining Company stock in lieu of payment of the above mentioned note and further demand is hereby made for an additional 2,500 shares of White Canyon Mining Company stock at the purchase price of 80¢ a share totalling $2,000, which amount I am authorized to pay you upon receipt of 10,000 shares of said stock."

This was merely a demand for the delivery of 10,000 shares of stock for $2,000—not

2. 41 Am.Jur., p. 599.

an offer to pay $2,000 for 2,500 shares of such stock.

 An option is a continuing offer which must be unconditionally accepted. In Daum Construction v. Child[3] we said: "To create a binding contract the acceptance must unconditionally agree to all the material provisions of the offer, and must not add any new material conditions \* \*." See authorities therein cited, including Williston on Contracts, Sec. 59, "an acceptance must comply exactly with the requirements of the offer \* \* \*." And Sec. 60, "a reply to an offer though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but a counter-offer."

The foregoing is a correct statement of the doctrine covering this situation. Under it we must reverse the trial court's decision that plaintiff was entitled to damages for defendant's failure to allow him to exercise his option to purchase such shares of stock.

As to the second contention, the evidence is clear that there was no agreement by defendants to pay attorney's fees in the event of breach of agreement other than the provision in the promissory note, and Mr. Morgan having made a valid tender of the debt due, plaintiff is not entitled to attorney's fees.[4]

3. Daum Const. Co. v. Child, 122 Utah 194, 247 P.2d 817, 821.

Affirmed in part and reversed in part. Each party to bear his own costs.

HENRIOD, McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.